UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:21-cv-60326-WPD

STANLEY & ZMIRA BATTAT,

    Plaintiffs,

vs.

QBE SPECIALTY INSURANCE COMPANY,

    Defendant.
_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM OF LAW IN SUPPORT**

Defendant QBE Specialty Insurance Company ("QBE"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 of the United States District Court for the Southern District of Florida, herby moves for summary judgment as to the claims in Plaintiffs' Complaint. As grounds for the Motion, QBE states as follows:

**I.  INTRODUCTION**

In August 2020, almost three years after Hurricane Irma, Plaintiffs reported a claim to QBE alleging that Plaintiffs' property sustained damage as a result of Hurricane Irma on September 10, 2017. By the time the claim was reported to QBE, Plaintiffs had already completed eight different roof repairs and repairs to the interior of the Property. Now, Plaintiffs are seeking replacement cost coverage for damages they claim were sustained as a result of Hurricane Irma, including costs associated with repairs to undamaged areas of the Property based on matching and continuity. Based on the undisputed facts, QBE is entitled to summary judgment as a matter of law for the following reasons: (1) Plaintiffs' recovery is barred as a matter of law because Plaintiffs failed to timely report the alleged loss to QBE; (2) Plaintiffs' claim for replacement cost damages is barred

as a matter of law because Plaintiffs have not completed repairs as required pursuant to the terms of the Policy; (3) Plaintiffs were precluded from filing suit against QBE pursuant to the Suit Against Us provision because they failed to comply with the terms of the Policy; and (4) Plaintiffs are not entitled to recover "matching" damages.

## II.  UNDISPUTED FACTS

Pursuant to Local Rule 56.1(a), QBE filed contemporaneously herewith its statement of undisputed material facts, each of which is established by competent evidence in the records.

## III.  STANDARD OF REVIEW FOR SUMMARY JUDGMENT

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *ABCO Premium Fin. LLC v. Am. Int'l Grp., Inc.*, No. 11-23020-CIV, 2012 WL 3278628, at *2 (S.D. Fla. Aug. 9, 2012), *aff'd*, 518 F. App'x 601 (11th Cir. 2013). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.

IV. **ARGUMENT**

**A. Recovery is barred as a matter of law because Plaintiffs failed to timely notify QBE of the alleged loss.**

The Policy's Duties After Loss provision states that an insured must "[g]ive prompt notice to us." Summary judgment is properly granted in favor of insurers where the insured fails to provide prompt notice of a claim as required by the insurance policy. *See e.g. Ramirez v. Scottsdale Ins. Co.*, No. 20-CV-22324, 2021 WL 5050184 (S.D. Fla. Oct. 29, 2021) (granting summary judgment in favor of insurer where the Hurricane Irma claim was reported twenty months or 617 days after the alleged loss and Plaintiff failed to sufficiently rebut the presumption of prejudice); *LMP Holdings, Inc. v. Scottsdale Ins. Co.*, No. 20-24099-CIV, 2021 WL 4900622 (S.D. Fla. Sept. 27, 2021) (granting summary judgment in favor of insurer where the Hurricane Irma claim was reported twenty-seven months after the alleged loss and Plaintiff failed to sufficiently rebut the presumption of prejudice because the claim was reported after repairs were made, depriving the carrier of an opportunity to investigate the claim); *Clena Invs., Inc. v. Scottsdale Ins. Co.*, No. 19-CV-63156, 2020 WL 8187789 (S.D. Fla. Dec. 8, 2020) (Report and Recommendation to grant summary judgment in favor of insurer where the Hurricane Irma claim was reported eighteen months after the alleged loss and after repairs had been made to the property and the Plaintiff failed to rebut the presumption of prejudice); *Adderly v. Hartford Ins. Co. of the Midwest*, No. 19-CV-25304-UU, 2020 WL 4915575 (S.D. Fla. Aug. 21, 2020) (granting summary judgment in favor of insurer where the Hurricane Irma claim was reported eighteen months after the alleged loss and Plaintiff failed to sufficiently rebut the presumption of prejudice); *Tamiami Condo. Warehouse Plaza Ass'n, Inc. v. Markel Am. Ins. Co.*, No. 19-CV-21289, 2020 WL 1692177 (S.D. Fla. Feb. 24, 2020) (granting summary judgment in favor of insurer where the Hurricane Irma claim was

reported seven months after the alleged loss and the Plaintiff failed to rebut the presumption of prejudice); *Lehrfield v. Liberty Mut. Fire Ins. Co.*, 396 F. Supp. 3d 1178, 1184 (S.D. Fla. 2019), *appeal dismissed*, No. 19-13027-HH, 2019 WL 6130842 (11th Cir. Oct. 21, 2019) (granting summary judgment in favor of insurer where the claim was reported eight months after the alleged loss and Plaintiff failed to sufficiently rebut the presumption of prejudice).

In *Adderly v. Hartford Ins. Co. of the Midwest*, No. 19-CV-25304-UU, 2020 WL 4915575, (S.D. Fla. Aug. 21, 2020), the Court succinctly detailed the law as it relates to analyzing enforceability of the notice provision of an insurance Policy:

> Under Florida law, "notice is a condition precedent to coverage, and an insured's failure to provide 'timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy.' " *Aseff v. Catlin Spec. Ins. Co.*, 115 F. Supp. 3d 1364, 1369 (S.D. Fla. 2015) (*quoting Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785 (Fla. 3d DCA 1981)); *see also Lehrfield v. Liberty Mut. Fire Ins. Co.*, 396 F. Supp. 3d 1178, 1182 (S.D. Fla. 2019). The Eleventh Circuit has explained that "the purpose of policy provisions requiring prompt notice 'is to enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it.' " *PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.*, 566 F. App'x 845, 847 (11th Cir. 2014) (*quoting Laster v. United States Fid. & Guar. Co.*, 293 So. 2d 83, 86 (Fla. 3d DCA 1974)).
>
> "The question of whether an insured's untimely reporting of loss is sufficient to result in the denial of recovery under the policy implicates a two-step analysis." *Yacht Club on the Intercoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 599 F. App'x 875, 879 (11th Cir. 2015) (*quoting LoBello v. State Farm Fla. Ins. Co.*, 152 So. 3d 595, 599 (Fla. 2d DCA 2014)). First, a court must determine "whether the insured provided timely notice." *Id.* Second, "if notice was untimely, prejudice to the insurer is presumed, but that presumption may be rebutted." *Id.* . . .
>
> A. <u>Notice</u>
>
> Although there is "no bright-line rule under Florida law setting forth a particular period of time beyond which notice cannot be considered prompt," Florida courts interpret the term "prompt" to mean "that notice should be given with reasonable dispatch and within a reasonable time in view of all of the facts and circumstances

> of the particular case." *Yacht Club on the Intracoastal Condo. Ass'n, Inc.*, 599 F. App'x at 879 (internal quotation marks and citation omitted). Put differently, "notice is necessary when there has been an occurrence that should lead a reasonable and prudent man to believe that a claim for damages would arise." *Id.* Whether "an insured's delayed notice to an insurer did not constitute prompt notice under the policy" is appropriate to resolve on summary judgment "when the factual record d[oes] not support an argument that the delay was reasonable." *PDQ Coolidge Formad, LLC*, 566 F. App'x at 848; *see also Yacht Club on the Intracoastal Condo. Ass'n, Inc.*, 599 F. App'x at 879 ("While the question as to what is a reasonable time, depending as it does upon the surrounding circumstances, is ordinarily for decision by the trier of facts, yet when facts are undisputed and different inferences cannot reasonably be drawn therefrom, the question is for the court.").
>
> . . .
>
> . . . [A] plaintiff's "initial belief that the loss did not meet the deductible would not relieve it from providing prompt notice of the loss under the [p]olicy." *Lehrfield*, 396 F. Supp. 3d at 1183. Indeed, Plaintiff's purported concerns "about the extent of damage and its deductible are not relevant under Florida law. Prompt notice is not excused because an insured might not be aware of the full extent of damage or that damage would exceed the deductible." *Yacht Club on the Intracoastal Condo. Ass'n, Inc.*, 599 F. App'x at 880; *see also Kendall Lakes Towers Condo. Ass'n, Inc. v. Pacific Ins. Co.*, No. 10-24310-CIV, 2012 WL 266438, at *4 (S.D. Fla. Jan. 30, 2012) ("[A]n insured's good faith belief that the damage is trivial or not covered by the policy is insufficient to justify non-compliance with the policy's notice provision.").

*Id.* at *3-4. Once a determination is made that the insured failed to timely provide the carrier notice, then there is a presumption of prejudice to the insurer and the burden shifts to the insured to show that the insurer was not prejudiced. *Id.* at *4.

Here, the undisputed evidence shows that Plaintiffs discovered that their Property sustained damage immediately after Hurricane Irma on September 10, 2017. Mr. Battat testified that he "immediately" noticed broken or missing roof tiles after Hurricane Irma. Post-suit, Plaintiffs produced photographs taken within days of Hurricane Irma showing that a tree fell on and was leaning against the structure at the Property near the master bedroom. On September 17, 2017,

seven days after the storm, Plaintiffs hired a handyman to cut down and remove the tree. According to Plaintiffs' testimony and verified discovery responses, Plaintiffs subsequently hired various individuals to make at least seven different repairs to the roof and interior of the Property over the course of two years:

| October 1, 2017 | Gutter and roof repair near where the tree had fallen |
| --- | --- |
| December 2017 or January 2018 | Roof repair over the master bathroom by Paul Bange Roofing and interior ceiling repair in master bathroom |
| February 2018 | Roof repair over the hallway leading to the laundry room and interior ceiling repair |
| September 2018 | Roof repair over the living room and interior ceiling repair in the living room |
| January 2019 | Roof repair over the dinette/breakfast area and interior ceiling repair in the breakfast area |
| February 2019 – May 2019 | Roof repair over the hallway leading to the master bedroom and interior ceiling repair in the hallway |
| June 2019 – September 2019 | Roof repair over the office and interior ceiling repair in the office |

Plaintiffs paid a total of approximately $21,000.00 to remove the tree and for the eight roof repairs and interior repairs completed from September 17, 2017 through September 2019. After observing damages in the dinette room in 2020, another person was contacted to make repairs at the Property and this person advised the Battats that there was damage at the Property. This exchange is what prompted the Battats to report the claim to QBE. On August 28, 2020, the claim was first reported to QBE – almost 3 years or, specifically, 1,083 days after the alleged date of loss of September 10, 2017.

As explained above, the Court first analyzes whether the insured provided prompt or timely notice. Plaintiffs did not report the claim until three years or 1,083 days after Hurricane Irma. Plaintiffs knew the Property sustained damage related to Hurricane Irma immediately after the

storm, by virtue of observing broken and missing roof tiles and the fallen tree. Moreover, they commenced roof repairs within weeks of Hurricane Irma. While there may be no bright line rule, there is no dispute that three years is not prompt, not with reasonable dispatch and not within a reasonable time. The cases cited above reflect that Courts have found notice to be untimely in shorter periods of time than at issue here. *Ramirez*, 2021 WL 5050184 (twenty months or 617 days after the alleged loss); *LMP Holdings, Inc.*, 2021 WL 4900622 (twenty-seven months); *Clena Invs., Inc.*, 2020 WL 8187789 (eighteen months); *Adderly*, 2020 WL 4915575 (eighteen months); *Tamiami Condo. Warehouse Plaza Ass'n, Inc.*, 2020 WL 1692177 (seven months); *Lehrfield*, 396 F. Supp. 3d at 1184 (eight months). There is no genuine issue of material fact that Plaintiffs did not promptly or timely report the Hurricane Irma claim to QBE.

Because QBE has established that the claim was not promptly or timely reported, prejudice to QBE is presumed and Plaintiffs bear the burden of proving a lack of prejudice on QBE's part. Plaintiffs will be unable to satisfy their burden. QBE's investigation of the claim was prejudiced by the late notice and the passage of time. Moreover, by the time the claim was reported to QBE, Plaintiffs had already removed the fallen tree, completed eight repairs to the roof in different sections, and completed repairs to the ceiling in seven different rooms inside the Property. Plaintiffs do not have any photographs or evidence of the condition of the Property immediately after Hurricane Irma (other than photographs of the fallen trees), of the condition of or claimed damages to the roof before any of the repairs were completed from October 2017 through September 2019, or of the condition or claimed damages to the interior before repairs were performed. Plaintiffs did not show the damaged property to QBE before commencing repairs and therefore QBE was not provided an opportunity to fully investigate the claim. Plaintiffs will be

unable to sufficiently rebut the presumption of prejudice. QBE is entitled to summary judgment as a matter of law because Plaintiffs failed to promptly report the claim to QBE.

### B. Plaintiffs cannot prove breach of contract by QBE under the Policy's Replacement Cost Coverage.

If a policy provision is not ambiguous, the plain language of the policy will be enforced. *Evanston Ins. Co. v. Haven S. Beach, LLC*, 152 F. Supp. 3d 1370, 1374 (S.D. Fla. 2015). "Although courts generally resolve ambiguities in favor of the insured, '[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite. It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intent of the parties.'" *Id.* (quoting *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So.2d 938, 942 (Fla.1979)). *See also Acosta, Inc. v. Nat'l Union Fire Ins. Co.*, 39 So. 3d 565, 573 (Fla. 1st DCA 2010) ("[C]ourts are not to 'rewrite' insurance contracts and should bear in mind that 'if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision.'") (citation omitted).

Where a policy requires repairs to be completed before replacement cost coverage is triggered and a plaintiff is seeking replacement cost coverage without performing repairs, the insurance carrier is entitled to summary judgment. *See CMR Constr. & Roofing, LLC a/a/o The Orchards Condo. Ass'n, Inc. v. Empire Indemnity Ins. Co.*, 843 Fed. Appx. 189, 193 (11th Cir. 2021) (affirming summary judgment in favor of an insurer where the insured sought RCV damages but had not made repairs); *CMR Constr. & Roofing, LLC v. ASI Preferred Ins. Corp.,* No. 219CV442FTM29MRM, 2021 WL 877560, at *6 (M.D. Fla. Mar. 9, 2021) (granting summary judgment in favor of an insurer where the insured sought RCV damages but had not made repairs);

*Buckley Towers Condo. v. QBE Ins. Corp.*, 395 Fed. Appx. 659 (11th Cir. 2010) (finding "that it was error for the district court to instruct the jury that they could award Buckley Towers RCV damages notwithstanding the clear terms of the insurance contract" and that "QBE was entitled to a grant of its motion for judgment as a matter of law on replacement cost value damages"); *Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007); *Fla. Ins. Guar. Ass'n v. Somerset Homeowners Ass'n, Inc.*, 83 So. 3d 850, 852 (Fla. 4th DCA 2011) (finding that the trial court erred by awarding RCV damages where repairs had not been completed); *State Farm Fire & Cas. Co. v. Patrick*, 647 So. 2d 983 (Fla. 3d DCA 1994) (reversing an order of partial summary judgment in favor of an insured because replacement cost coverage was not triggered until repairs were completed); *CMR Constr. & Roofing, LLC v. ASI Preferred Ins. Corp.*, No. 219CV442FTM29MRM, 2021 WL 877560, at *6 (M.D. Fla. Mar. 9, 2021) (granting summary judgment in favor of insurer on claims for replacement cost benefits where repairs were not completed); *Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 2012 WL 13012457 (S.D. Fla. May 8, 2012) (partial summary judgment in favor of insurer on claims for replacement cost benefits on items that were not repaired or replaced.); *Los Palacios II Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 2011WL 13100234 (S.D. Fla. Sept. 6, 2011) (same); *Oriole Gardens Condo. Ass'n I v. Aspen Specialty Ins. Co.*, 875 F. Supp.2d 1379 (S.D. Fla. 2012) (condominium association's failure to repair or replace damaged property barred its claim for replacement cost coverage); *Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*, 2011 WL 6754063, *11 (S.D. Fla. Dec. 22, 2011).

In *CMR Construction & Roofing, LLC a/a/o The Orchards Condo. Ass'n, Inc. v. Empire Indemnity Ins. Co.*, a substantively and factually similar case, the Eleventh Circuit, applying

Florida law, affirmed summary judgment in favor of an insurance company where the only damage claim submitted by the insured (or its assignee) was an RCV claim. *CMR Construction & Roofing, LLC a/a/o The Orchards Condo. Ass'n, Inc.*, 843 Fed. Appx. at 193.  The policy in *CMR* stated "that Empire will not pay the replacement cost value, however: '(1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repairs or replacements are made as soon as reasonably possible after the loss or damage.'" *Id.* at *1.  In affirming summary judgment, the Eleventh Circuit stated:

> The insurance policy provides that a claim for replacement cost value will not be paid "[u]ntil the lost or damaged property is actually repaired or replaced" and "[u]nless the repairs or replacement are made as soon as reasonably possible after the loss or damage." That "until and unless" provision is plain and unambiguous. It means that Empire was not obligated to pay CMR the replacement cost value until CMR had actually made the repairs and incurred the costs of doing so. *See Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007) ("[C]ourts have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed.") (quoting *State Farm Fire & Cas. Co. v. Patrick*, 647 So. 2d 983 (Fla. 3d DCA 1994)).
>
> Empire could not have breached the insurance policy based on the replacement cost value because the "until and unless" provision had not been satisfied. CMR's interrogatory answers state that it has made only temporary repairs, not that it has completed the repairs to all of the damage caused by Hurricane Irma. Empire could not have breached by not paying CMR's estimated replacement cost value because CMR had not made any repairs covered by the policy; and certainly not the millions of dollars' worth that CMR's estimate lists and that CMR seeks in this lawsuit.
>
> Nor could Empire have breached the insurance policy based on the actual cash value because CMR did not and does not seek actual cash value. . ..
> . . . .
> . . . . But even assuming CMR is right that the payment of that amount was based on an insufficient estimate of repair costs, it does not invalidate the "until and unless" provision. CMR insists that it is seeking the replacement cost value, which requires completion of the repairs before Empire must pay under the policy. There is no reason to think that if CMR had actually repaired the damaged property, as

> the policy requires, Empire would have denied coverage for the cost of the completed repairs.

*Id.* at 192-193. In *Buckley Towers Condominium v. QBE Ins. Corp.*, 395 Fed. Appx. 659 (11th Cir. 2010), the Eleventh Circuit interpreted virtually identical policy language and held that the insured was not entitled to replacement cost benefits where actual repairs did not occur. The Eleventh Circuit found that "the insurance contract unambiguously requires the insured to repair its property before receiving RCV damages." *Id.* at 662. In *CMR Constr. & Roofing, LLC v. ASI Preferred Ins. Corp.*, No. 219CV442FTM29MRM, 2021 WL 877560 (M.D. Fla. Mar. 9, 2021), the Middle District of Florida interpreted policy language which stated that the insurer "will pay no more than the actual cash value of the damage until actual repair or replacement is complete" (which is identical to the QBE Policy) and granted summary judgment in favor of the insurer on this issue. *Id.* at *6.  In *New Hope Ministries Inc. v. Church Mutual Insurance Company*, in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida, Case No. 11-2019-CA-003928-0001-XX, on June 4, 2021, the Court granted summary judgment in favor of the insurance carrier finding:

> 3. The Court hereby GRANTS the Defendant's Motion filed on 4/5/21. This Motion argues that since the Plaintiff seeks only replacement cost value for its alleged damages and that the repairs or replacements have not occurred, that Plaintiff is precluded from obtaining relief. This Court agrees. *CMR Construction & Roofing LLC a/a/o The Orchards Condo Ass'n Inc.,* ---Fed. Appx. ---, 2021 WL 246201. There is no evidence that the repairs or replacements have occurred. The policy is clear that this is required for a claimant to cover.[1]

Courts have similarly held that the doctrine of prevention of performance will not excuse an insured from complying with its contractual obligation to complete repairs before payment of

---

[1] A copy of the Court's Order from the *New Home Ministries Inc. v. Church Mutual Insurance Company* case is attached hereto as Exhibit 1.

11

RCV damages. *Buckley Towers Condo., Inc.*, 395 F. App'x at 663 ("Although Buckley Towers may be unable to receive the full range of benefits of their contract without an advance payment under Florida law, that cost and inconvenience may not relieve them of repairing the building prior to claiming RCV damages."); *Somerset Homeowners Ass'n, Inc.*, 83 So. 3d at 852 (adopting *Buckley* and finding that the doctrine of prevention of performance did not apply to excuse an insured from complying with the contractual obligation to complete the repairs before receipt of RCV payment). "Inconvenience or the cost of compliance [with contractual terms], though they might make compliance a hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do a thing that is possible and lawful." *Buckley Towers Condo., Inc.*, 395 F. App'x at 663 (*quoting N. Am. Van Lines v. Collyer*, 616 So. 2d 177, 179 (Fla. 5th DCA 1993)); *Oriole Gardens Condo. Ass'n I*, 875 F. Supp. 2d at 1385.

Plaintiffs simply cannot be reimbursed or indemnified under the Policy for unperformed or hypothetical repairs. The Policy is a contract of indemnity, and there are no repairs for which to indemnify anyone. *Dantzler Lumber & Export Co. v. Columbia Cas. Co.*, 115 Fla. 541, 555 (1934) ("[T]he contract of insurance [is]…a contract of indemnity.").

Here, the QBE Policy contains similar replacement cost language as that analyzed by the Court in the two *CMR* cases and *Buckley*. The QBE Policy in this case reads as follows:

> 6. **Loss Settlement**. Covered property losses are settled, after application of the deductible, as follows:
> . . . .
> (4) *We will pay no more than the actual cash value of the damage until actual repair or replacement is complete*. Once actual repair or replacement is complete, we will settle the loss as noted in paragraphs d.(1) and d.(2) above. However, if the cost to repair or replace the damage is both:
>     (a) Less than 5% of the amount of insurance in this policy on the building; and
>     (b) Less than $2,500;

> We will settle the loss as noted in d.(1) and d.(2) above whether or not actual repair or replacement is complete.

Emphasis supplied. This language is clear and unambiguous.

Fundamentally, Plaintiffs cannot establish any right to payment based on anticipated repair costs or replacement cost because Plaintiffs have not performed all repairs, have not replaced the roof, have not repaired the interior and have not incurred such repair costs to qualify for indemnity. The Policy's replacement cost coverage indemnifies an insured for actual repair costs arising from covered repairs under the Policy. Without such repairs or costs, there are no repair costs to indemnify and trigger replacement cost coverage.

Plaintiffs are seeking only damages based on replacement cost value. It is undisputed that the roof at the Property has not been replaced and that interior repairs at the Property have not been completed. The only damage estimate produced by Plaintiffs is the PICC Estimate. Plaintiffs admit that they are relying on the PICC Estimate as the measure of damages in this case. The PICC Estimate is a replacement cost estimate and does not reference, include or deduct depreciation. Plaintiffs admit that they are seeking the replacement cost damages. Plaintiffs have not presented an actual cash value damage estimate and the discovery cut off has expired such that Plaintiffs now cannot attempt to revise, correct or produce a new damage estimate. Even when factoring in the repairs already performed (assuming, *arguendo,* they are attributable to the claimed date of loss), the total claimed cost, approximately $21,000, does not exceed the applicable deductible of $50,000. These undisputed facts are fatal to Plaintiffs' breach of contract action and its replacement cost claim. Plaintiffs cannot establish that QBE breached the Policy by not paying the replacement cost value of claimed damages when repairs have not been completed and the cost of repairs that have been completed is below the applicable deductible. Because Plaintiffs have not completed

repairs, Plaintiffs are not entitled to invoke replacement cost coverage. QBE is entitled to summary judgment as a matter of law on this basis.

### C. Because Plaintiffs failed to comply with the terms of the Policy, they are precluded from filing suit against QBE pursuant to the Suit Against Us provision.

The Suit Against Us provision of the Policy specifically provides, in part, that "No action can be brought against us unless there has been full compliance with the policy provisions..." This provision is clear, unambiguous and enforceable. *See Goldberg v. Universal Prop. & Cas. Ins. Co.*, 302 So. 3d 919, 923 (Fla. 4th DCA 2020). This provision precludes Plaintiffs from filing suit against QBE unless Plaintiffs fully complied with all of the terms of the Policy. As detailed above, Plaintiffs did not comply with the Duties After Loss provision by: (1) failing to submit timely notice of the claim; (2) failing to "keep an accurate record of repair expenses;" and (3) failing to "[s]how us the damaged property." In addition, Plaintiffs are attempting to seek coverage based on replacement cost but have failed to complete repairs. Because Plaintiffs failed to comply with the terms of the Policy, Plaintiffs are precluded from even filing this suit against QBE and Plaintiffs cannot prevail in this action.

### D. Plaintiffs are not entitled to recover "matching" damages.

The plain language of the Policy does not afford coverage for repairs of undamaged property strictly due to "matching" or "uniformity" issues. Under the plain language of the Policy, coverage is limited to "**direct physical loss to property** described in C. COVERED PROPERTY of this policy." The Third District Court of Appeal recently interpreted "direct physical loss" policy language:

> This Court has previously interpreted the meaning of this language: "A 'loss' is the diminution of value of something, and in this case, the 'something' is the insureds' house or personal property. Loss, Black's Law Dictionary (10th ed. 2014). 'Direct'

and 'physical' modify loss and impose the requirement that the damage be actual." *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017).

*Vazquez v. Citizens Prop. Ins. Corp.*, 304 So. 3d 1280, 1284 (Fla. 3d DCA 2020). Consistent with the language of the Policy, "direct physical loss" means "the property that was actually damaged." *Id.* at 1285. Section 626.9744, Florida Statutes, often referred to as the "Matching Statute," specifically states that it will apply "unless otherwise provided by the policy." *See* Fla. Stat. § 626.9744. In other words, the Policy will control and dictate application of the Matching Statute. *See Vazquez v. Citizens Prop. Ins. Corp.*, 304 So. 3d 1280, 1284 (Fla. 3d DCA 2020) ("Ms. Vazquez's interpretation further disregards the plain text of the matching statute, which clearly defers to the policy as controlling.").

"[M]atching damages do not fall within the Policy's definition of 'direct loss.'" *CMR Constr. & Roofing, LLC v. ASI Preferred Ins. Corp.*, No. 219CV442FTM29MRM, 2021 WL 877560, at *8 (M.D. Fla. Mar. 9, 2021) (granting summary judgment in favor of insurer and precluding plaintiff from recovering "matching" damages). In *Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*, the defendant insurer argued that coverage under the policy only extended to "direct physical loss or damage" and did not "cover replacement of undamaged property to ensure matching." *Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*, No. 11-60447-CIV, 2011 WL 6754063, at *10 (S.D. Fla. Dec. 22, 2011). The Court in *Ocean View* granted summary judgment in QBE's favor, in part, "because the plain language of the policy [did] not afford coverage to ensure 'matching' or 'uniformity' in repairs."[2] *Id.* QBE also obtained summary judgment in its

---

[2] The *Ocean View* court also held that the Matching Statute was inapplicable because it only applied to homeowner policies and the policy was a commercial policy.

favor in *Palm Bay Yacht Club Condo. Ass'n v. QBE Ins. Corp.* on the basis that there was no policy provision which entitled the plaintiff to matching of undamaged property. *Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-23685-CV, 2012 WL 13012457, at *4 (S.D. Fla. May 8, 2012).

Given the limitation of coverage to "direct physical loss," the Matching Statute is inapplicable because the Policy, which controls, does not provide coverage for undamaged parts of the Property. Plaintiffs are relying on the PICC Estimate as the measure of damages in this case. Mario Ferrucho prepared the PICC Estimate. Ferrucho testified that the PICC Estimate includes costs associated with repairs for matching and continuity purposes. In fact, Ferrucho admitted that "most of this estimate is including work that's being done not for actual damage, but for matching and continuity purposes." Ferrucho Depo. 61:10-14. Ferrucho admitted that many rooms contained in the PICC Estimate were included only because of matching purposes – specifically the upstairs hallway, bedroom, stairway, kitchen, storage area/room, dining room, entry/foyer, waiting area, office, and master entry. However, other rooms were included in the PICC Estimate to complete a minor ceiling repair associated with actual claimed damage (based on the assumption that the damage is allegedly related to the claimed date of loss) with the remainder for matching purposes – specifically the library, family room, breakfast area/room, hallway, hall 2, master bedroom, and master bathroom. In the rooms with some claimed repair of direct physical damage, all costs associated with the walls and flooring were based on matching and continuity and most of the ceiling related expenses were for matching and continuity. Because matching and continuity damages are not covered under the Policy, QBE is entitled to summary judgment finding that Plaintiffs are not entitled to any damages claimed strictly on the basis of

matching, including but not limited to: (1) any claimed repairs to the upstairs hallway, bedroom, stairway, kitchen, storage area/room, dining room, entry/foyer, waiting area, office, and master entry; (2) all ceiling and floor repairs in the library, family room, breakfast area/room, hallway, hall 2, master bedroom, and master bathroom; and (3) all ceiling repairs and painting to any areas beyond the claimed limited staining in the library, family room, breakfast area/room, hallway, hall 2, master bedroom, and master bathroom.

**V.      CONCLUSION**

For the reasons stated here, there are no genuine issues of material fact in dispute and QBE is entitled to summary judgment as a matter of law.

Dated: December 3, 2021

> Respectfully submitted,
>
> KELLER LANDSBERG PA
> *Counsel for Defendant*
> Broward Financial Centre
> 500 East Broward Boulevard, Suite 1400
> Fort Lauderdale, FL 33394
> Telephone: 954-761-3550
> Chris.Badiavas@KellerLandsberg.com
> Dena.Sacharow@kellerlandsberg.com
> Valerie.Hylton@kellerlandsberg.com
> Marie.Sanchez@kellerlandsberg.com
>
> By: */s/ Dena B. Sacharow*
> Dena B. Sacharow
> Florida Bar No.: 84640
> Christopher J. Badiavas
> Florida Bar No.: 1029842

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this **3rd day of December, 2021,** we presented to the above Clerk of the Court for filing and uploading to the Court's CM/ECF system which will generate a notice of electronic filing to: **Meghan Betz, Esq.** and **Joseph Goldglantz, Esq.,** (Counsel for Plaintiffs), Gold Litigation P.A., 220 SW 16th St., Dania Beach, Florida 33004; Ph: (305) 454-2270; Fax: (305) 760-4148. Email: meghan@goldlitigation.com; joseph@goldlitigation.com; E-Service: filings@goldlitigation.com.

By: */s/ Dena B. Sacharow*
    Dena B. Sacharow, FBN: 84640